UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA GUADALUPE CORTES JIMENEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[1]<br><br>    Defendant. | Case No. 1:22-cv-01344-BAM<br><br>**ORDER REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 21) |

**INTRODUCTION**

Plaintiff Maria Guadalupe Cortes Jimenez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act. The parties' briefing on the motion was submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2] (Docs. 21, 25, 26.) Having

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this suit.
[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Docs. 10, 12, 15, 18.)

1

considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record and is not based upon proper legal standards. Accordingly, this Court will grant Plaintiff's motion for summary judgment and reverse the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

Plaintiff applied for Title II Disability Insurance and Title XVI Supplemental Security Income on May 9, 2019, in which Plaintiff alleged that she became disabled on April 30, 2018. AR 245-58.[3] Plaintiff's application was denied initially on October 11, 2019, and on reconsideration on April 9, 2020. AR 140-45; 151-56.

Plaintiff requested a hearing before an administrative law judge ("ALJ") and ALJ Douglas Cohen held an initial hearing on January 14, 2021. AR 56-75. ALJ Cohen issued an order denying benefits on the basis that Plaintiff was not disabled on July 30, 2021. AR 31-55. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied. AR 6-13. This appeal followed.

**January 14, 2021 Hearing Testimony**

ALJ Douglas Cohen held a telephonic hearing on January 14, 2021. AR 56-75. William Houston Reed, an impartial vocational expert, also appeared and testified. AR 69-74. The ALJ began by informing Plaintiff that Plaintiff had the right to be represented by an attorney or non-attorney who could help obtain evidence about the claim, explain medical terms, protect Plaintiff's rights, make any requests, and give notice about proceedings. AR 58-59. The ALJ further clarified that a representative could not charge a fee unless it was approved by the Social Security Administration and the representative would only be paid if Plaintiff won her case. AR 59. The ALJ also noted that if Plaintiff obtained a representative, she might be responsible for certain expenses such as obtaining or copying medical records, and that there are some legal service organizations that would represent her free of charge if she met the qualifying requirements of that organization. *Id.* The ALJ also noted that Plaintiff had the right to proceed without a representative and the ALJ would obtain any relevant

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

evidence that was not already in the file and question Plaintiff at the hearing. AR 59-60. The ALJ however cautioned that "nevertheless, a representative can present your evidence in a way that is most favorable to your case." AR 60. The ALJ asked "Do you understand your rights to representation," and Plaintiff responded "Yes. Yes." *Id.* The ALJ added that the "reason I just went through them with you is because, at this time, if you'd like, I can give you more time to get a representative. What that means is, we wouldn't have the hearing today. It would be postponed and rescheduled, and you'd come back in about three months, and we'd have the hearing then. But that's up to you." *Id.* Plaintiff said "Okay. So, no, like you just said, I – I would rather proceed without the representative. I don't have anyone to represent me right now." AR 60. The ALJ then admitted Exhibits A, B, D, E, and 1F through 8F. *Id.*

  Under examination by the ALJ, Plaintiff testified that she went to school in Mexico and had been in the United States for 31 years. AR 61. Plaintiff testified that she had Medi-Cal insurance since at least April 2018. AR 62. The ALJ explained that he and Plaintiff would "make a list of everything and then, we'll talk about it. We'll go back and talk about it one at a time in more detail." *Id.* Plaintiff testified that in addition to a heart condition, depression, and anxiety, she suffered from panic attacks. *Id.* Plaintiff testified that she sees a psychiatrist, Dr. Iyala, and a psychologist. *Id.* The court interpreter noted that there was some confusion about the spelling of Dr. Iyala's name. *Id.* The ALJ asked if Dr. Iyala was from Omni, and Plaintiff said that he was from Omni. AR 63. The interpreter also added that Plaintiff asked if she could get her daughter-in-law to help, and the ALJ said "No, I have that – I have that information." *Id.* Plaintiff added that she could not see the letters on her medication well because her glasses were not good. *Id.* Plaintiff also clarified that she was seeing Dr. Patel at Omni for mental health treatment. AR 63-64. The ALJ noted that he would need "all the Omni records from… September '19 to present." AR 64. Plaintiff said that she would have panic attacks whenever she was next to a police officer and around other people, so she stayed isolated in her room. *Id.* She testified that she spent almost the entire day in her room and would only go out when she needed to eat something and to make sure that there was no one else in the house. *Id.* She said that when she left her room, she would get something to eat or go to the bathroom. *Id.*

1       Plaintiff stated that she was not working at the time of the hearing and last tried working in
2  2020 to take care of an elderly person, but there were days when she did not feel well and did not go.
3  AR 64-65.  She was in that position for approximately two to three months beginning in May 2020,
4  and had not worked since then.  AR 65.  Plaintiff testified that she saw Dr. Patel for her heart
5  condition and had last been in for a checkup in June 2020 where he had prescribed medications.  *Id.*
6  She said that her heart condition caused her to get very tired and out of breath.  *Id.*  Plaintiff also noted
7  that she had another appointment for June or July and that she needed to go back.  AR 65-66.  Plaintiff
8  said that she talked to her doctor at Omni about her heart problems.  AR 66.  Plaintiff testified that she
9  saw her family doctor at Omni, had seen specialists from Omni, and had seen Dr. Price related to a
10 surgery in Bakersfield.  AR 66-67.  Plaintiff stated that the last time she saw Dr. Price was in 2020.
11 AR 67.  The ALJ noted that he would need updated records from Dr. Price from April 2018 forward.
12 *Id.*

13      Plaintiff testified that she was still having problems with her left shoulder and that she was
14 right-handed.  *Id.*  She stated that she could not lift her left arm or left shoulder up too high, as it
15 would cause her pain.  *Id.*  She also said that she had to take medication for the pain and when she
16 would grab something with her hand it would fall out of her hand.  AR 67-68.  Plaintiff testified that
17 she was five feet tall and approximately 160 pounds.  AR 68.  She said that she spent her days by
18 being in her room most of the day and would sometimes go out to the living room to see her 12-year-
19 old son who would be on the computer.  *Id.*  She said that she did not babysit, and the last time she
20 babysat was when her children were little, in approximately 2005 or 2006.  *Id.*  In response to the ALJ
21 asking if there was anything else she thought he should know, Plaintiff said that on the Monday
22 following the hearing she had an appointment scheduled for back surgery related to a large spot that
23 appeared on her back to determine if it was cancerous.  AR 69.  Plaintiff said that the surgery was
24 through Omni.  *Id.*

25      Following Plaintiff's testimony, the ALJ elicited testimony from vocational expert ("VE")
26 William Houston Reed.  AR 69-74.  The VE testified that he did not know Plaintiff and had not
27 discussed the merits of Plaintiff's case.  AR 69.  The VE additionally testified that he had reviewed the
28 record and was present during Plaintiff's testimony.  *Id.*  The VE testified that from 2006 to 2013,

Plaintiff's work was as Almond Packer (light exertional level, unskilled work, SVP 2). AR 69-70. The VE testified that Plaintiff's work for Randstad from 2014 to 2016 was as Orange Packer (light, unskilled, SVP 2). AR 70. The VE also testified that Plaintiff's work from 2016 to 2018 with Employ Bridge was as Blueberry Packer and was performed as light or medium. AR 70. The VE testified that the 2016 through 2018 position would be classified in the Dictionary of Occupational Titles as Packer, Agricultural Produce (unskilled, SVP 2) and "up to medium exertional demand, depending on the product." AR 70-71.

The ALJ then asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to consider a hypothetical individual who could: do light work; occasionally climb ramps and stairs only; could not climb ladders, ropes, or scaffolds; occasionally balance, stoop, crouch, crawl, and kneel; frequently push and pull with the nondominant left upper extremity; no more than occasionally reach over head with the left upper extremity; and perform jobs that only have simple (as defined in the Dictionary of Occupational Titles as SVP levels 1 and 2) tasks, decisions, and instructions not performed in a fast-paced production environment. AR 71. The VE asked whether the work Plaintiff did work on any of the packer jobs, including packing almonds, blueberries, and oranges, on a conveyor belt. *Id.* Plaintiff testified that the work was done inside, and she would sit at tables where the product would be passed to Plaintiff to pack. AR 71-72. The VE then testified that the hypothetical individual could not do the past relevant work. AR 72.

The ALJ then asked the VE to add in the vocational factors and assume the hypothetical individual was of Plaintiff's age, education, and work history. The VE testified that there would be other jobs in the national economy that such a person could perform, including: Housekeeping Cleaner without cleaning in private homes which might involve more pushing and pulling (DOT No. 323.687-014, light, unskilled, SVP 2, with approximately 173,000 jobs nationally); Marker (DOT No. 209.587-034, light, unskilled, SVP 2, with 129,000 jobs nationally); and Photocopying Machine Operator (DOT No. 207.685-014, light, unskilled, SVP 2, with 10,000 jobs nationally). AR 72-73. The VE testified that the jobs identified were consistent with the Dictionary of Occupational Titles but noted that the Dictionary does not address pushing and pulling with one particular arm or reaching overhead.

5

AR 73.  For those limitations, the VE based his opinion on his background, education, training, work experience, and knowledge of job performance.  AR 73-74.

The ALJ then asked whether employers would tolerate absenteeism if the hypothetical person would be unable to perform their job for periods throughout the day due to symptoms from impairments.  AR 74.  The VE testified that employers tolerate on average eight days in the first year absent and stated that if employees were absent one day per month on a consistent basis there would be no jobs.  *Id.*  The ALJ then asked Plaintiff if she had any questions or comments, to which Plaintiff answered "No."  *Id.*  The ALJ then added that Plaintiff should stay on the line with the interpreter so he could get an electronic release for records and ask Plaintiff questions off the record.  *Id.*

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 31-55.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 30, 2018.  AR 39.  The ALJ identified the following severe impairments: obesity, cardiac disorder, left shoulder disorder status-post surgery, mood disorder, and generalized anxiety disorder.  AR 40.  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 40-42.

Based on a review of the entire record, the ALJ found that Plaintiff retained the RFC to perform light work with the limitations that Plaintiff was limited to: occasional climbing of ramps and stairs only (no ladders, no ropes, no scaffolds); occasional balancing, stooping, crouching, crawling, and kneeling; frequent pushing and pulling with the non-dominant left upper extremity; no more than occasional overhead reaching with the left upper extremity; limited to jobs that have only simple tasks, decisions, and instructions, not performed in a fast-paced production environment with simple being defined as the term is used in the Dictionary of Occupational Titles describing SVP levels 1 or 2.  AR 43-48.  The ALJ considered "all symptoms and the extent to which these symptoms can reasonably be

6

accepted as consistent with the objective medical evidence and other evidence," as well as "medical opinion(s) and prior administrative medical finding(s)." AR 43; 43-48.

Given this RFC, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 48. However, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. 48-49. The ALJ noted that examples of jobs consistent with Plaintiff's age, education, work experience, and RFC included: (1) Housekeeping Cleaner (DOT No. 323.687-014, with 173,000 jobs nationally); (2) Marker (DOT No. 209.587-034, with 129,000 jobs nationally); and (3) Photo Copying Machine Operator (DOT No. 207.685-014, with 10,000 jobs nationally). *Id.* The ALJ therefore concluded that Plaintiff had not been disabled from April 30, 2018, through the date of the decision. AR 49-50.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has

lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

### **DISCUSSION**[4]

Plaintiff first argues that the ALJ's RFC was not supported by substantial evidence, contending both that state agency consultants' determinations and the ALJ's assessment of the state agency consultants' determinations were not sufficiently supported. (Doc. 21 at 7-8, Doc. 26 at 2-3.) Plaintiff next contends that the ALJ erred by examining medical records not examined by state agency consultants. (Doc. 21 at 8-9.) Plaintiff further argues that she was prejudiced by the lack of representation at the hearing and that the ALJ erred by failing to further develop the record. (Doc. 21 at 10-16; Doc. 26 at 4-7.)

**A.    Evaluation of Medical Opinions**

Plaintiff challenges the state agency consultants' opinions and the ALJ's assessment of them, contending that state agency consultants Dr. Alan Entin's Dr. Howard Leizer's determinations and the ALJ's assessment of those determinations were not sufficiently supported. (Doc. 21 at 7-8, Doc. 26 at 2-3.)

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions. 20 C.F.R. §§ 404.1520c, 416.920c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a),

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

416.920c(a). The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Woods,* 32 F.4th at 792. The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, ... and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id.* (internal citations omitted).

Plaintiff challenges the opinion of and the ALJ's assessment of the opinions of Dr. Entin and Dr. Leizer. On August 30, 2019, Dr. Alan D. Entin opined that Plaintiff's impairments included: Dysfunction – Major Joints (Primary Priority, Severe); Essential Hypertension (Other Priority, Non Severe); Disorders of Back – Discogenic and Degenerative (Other Priority, Non Severe); Anxiety and Obsessive-Compulsive Disorders (Secondary Priority, Severe); and Depressive, Bipolar and Related Disorders (Other Priority, Severe). AR 83. He further opined that, related to Plaintiff's Depressive and Anxiety-related disorders, she had mild limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing herself. *Id.* Dr. Entin further noted "Rated severe, capable of sustaining work involving simple-routine-1-2 step instructions, able to maintain approp concentration/pace for simple routine work tasks." AR 84.

Dr. Entin also noted that Plaintiff was not significantly limited in her ability to: carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions. AR 87-88. He wrote that Plaintiff was moderately limited in the ability to carry out detailed instructions and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 88. He also noted that Plaintiff did not have social interaction or adaptation limitations. *Id.* He wrote as explanation, "severe anxiety and depression, able to remain focused for simple-routine work." *Id.*

On April 9, 2020, Dr. Howard S. Leizer opined that Plaintiff was not significantly limited in abilities to remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; and make simple work-related decisions. AR 119-20. However, Dr. Leizer also noted that Plaintiff was moderately limited in the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* Dr. Leizer further wrote that Plaintiff "can remember/carry-out/complete simple routine tasks… can maintain Pace, persistence, concentration and complete a regular work schedule for simple-routine tasks… can interact appropriately with Supervisors/Co-worker/public… [and] can interact/respond appropriately to normal changes and hazards encountered in the workplace." AR 120.

Dr. Leizer further indicated that Plaintiff's impairments included: Dysfunction – Major Joints (Primary Priority, Severe Impairment); Essential Hypertension (Other Priority, Non Severe); DDD

(Disorders of Back-Discogenic and Degenerative) (Other Priority, Non Severe); Anxiety and Obsessive-Compulsive Disorders (Secondary Priority; Severe); and Depressive, Bipolar and Related Disorders (Other Priority, Severe). AR 130. Dr. Leizer also noted that Plaintiff's had mild limitations in her ability to understand, remember, or apply information and to interact with others. *Id.*

In evaluating Dr. Entin's opinion, along with the opinion of state agency consultant Howard Leizer, the ALJ reasoned as follows:

> State agency psychologists, Alan D. Entin, Ph.D., and Howard S. Leizer, Ph.D., completed mental residual functional capacity assessments and psychiatric review techniques of the claimant on August 30, 2019 and April 9, 2020, respectively. Dr. Entin and Dr. Leizer indicated that the claimant has mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation in concentration, persisting or maintaining pace; and mild limitation in adapting or managing oneself. They determined the claimant is not significantly limited to only moderately limited in all work-related mental activities except for being not limited in social interaction and adaptation (Exhibits 1A, 2A, 5A, 6A). Dr. Entin and Dr. Leizer reviewed the claimant's medical history. Their opinions are generally consistent with the claimant having no more than moderate work-related mental limitations. However, the undersigned finds that the record supports the claimant having moderate limitation in understanding, remembering, or applying information and adapting or managing oneself. Thus, the opinions of Dr. Entin and Dr. Leizer are somewhat persuasive because they are somewhat supported by the evidence and are somewhat consistent with the record as a whole.

AR 47-48.

The Court finds that the ALJ did not appropriately evaluate the persuasiveness of Dr. Entin's and Dr. Leizer's opinions based on the factors of supportability and consistency. First, the Court notes that, while the ALJ cited Dr. Entin's and Dr. Leizer's opinions and mentioned some of Dr. Entin's and Dr. Leizer's opined limitations, the ALJ did not address their findings that Plaintiff was moderately limited in the ability to carry out detailed instructions and that Plaintiff was moderately limited in the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 47-48; 88; 119-20.

As to consistency, the ALJ wrote that "Dr. Entin and Dr. Leizer reviewed the claimant's medical history. Their opinions are generally consistent with the claimant having no more than moderate work-related mental limitations." *Id.* However, the ALJ does not provide citations to the record indicating which evidence in Plaintiff's medical history are consistent with Plaintiff having at most moderate limitations. Indeed, the ALJ instead only explained that the "record supports the claimant having moderate limitation in understanding, remembering, or applying information and adapting or managing oneself" and concluded that the opinions are "somewhat persuasive because they are somewhat supported by the evidence and are somewhat consistent with the record as a whole." AR 48. In doing so, the ALJ does not explain what evidence supports or undermines Dr. Entin's and Dr. Leizer's opinions. Beyond general reference to "no more than moderate work-related" limitations, the ALJ also does not address Dr. Entin's and Dr. Leizer's opined moderate limitations on Plaintiff's abilities to carry out detailed instructions and complete a workday and workweek at a consistent pace without an unreasonable number and length of rest periods. *See* 47-48 (ALJ only found the "record supports the claimant having moderate limitation in understanding, remembering, or applying information and adapting or managing oneself.") Accordingly, the ALJ did not appropriately address the consistency factor. The ALJ also does not address the supportability factor in his analysis. *See* AR 47-48.

In sum, the ALJ's brief discussion does not discuss some of the opined moderate limitations, does not articulate how the ALJ considered the consistency and supportability factors, does not point the Court to evidence in the record to support the conclusions, and does not provide a path for the Court to review the ALJ's logic. Here, the ALJ did not properly articulate the persuasiveness of the opinion and explain how the supportability and consistency factors supported the persuasiveness of the opinion. The ALJ therefore erred in assessing the medical opinion of Dr. Entin and Dr. Leizer. *Woods*, 32 F.4th at 792; *Marie S. v. Kijakazi*, No. 20-CV-2196-MMA-BGS, 2023 WL 2265227, at *16 (S.D. Cal. Feb. 28, 2023), report and recommendation adopted, No. 20-CV-2196-MMA (BGS), 2023 WL 2637388 (S.D. Cal. Mar. 24, 2023) (concluding ALJ's generalizations about inconsistency made it challenging to find supportability errors inconsequential where ALJ did not indicate what if any limitations or portions of the medical opinion he found inconsistent with records).

1    Defendant argues that substantial evidence supported the ALJ's findings that the PAMFs were
2 largely with the evidence, citing both normal findings and abnormal evidence in the record.  (Doc. 25
3 at 12-13.)  However, while Defendant now cites evidence from the record to support the ALJ's
4 conclusions, the ALJ himself did not provide citations to the record or an explanation of the evidence
5 supporting his conclusions.  The Ninth Circuit has noted that "[l]ong-standing principles of
6 administrative law require us to review the ALJ's decision based on the reasoning and factual findings
7 offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have
8 been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).  The ALJ's
9 broad statements do not allow the Court to discern why the ALJ ignored some of Dr. Entin's and Dr.
10 Leizer's opined moderate limitations or why the ALJ considered this opinion somewhat persuasive,
11 and the Court will not attempt to intuit what the ALJ may have been thinking.
12    Accordingly, the ALJ erred in assessing Dr. Entin's opinion.
13    **B.    Remedy**
14    The decision whether to remand for further proceedings or order an immediate award of
15 benefits is within the Court's discretion.  *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir.
16 2000).  Unless "the record has been fully developed and further administrative proceedings would
17 serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d
18 995, 1020 (9th Cir. 2014).  As it is not clear that "further administrative proceedings would serve no
19 useful purpose," remand for further proceedings is appropriate.  *Id.*; *see also Dominguez v. Colvin*, 808
20 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of
21 Social Security, with or without remanding the cause for a rehearing, but the proper course, except in
22 rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal
23 quotes and citations omitted).  On remand, the ALJ should specifically address the factors of
24 supportability and consistency with respect to Dr. Entin's and Dr. Leizer's opinions.
25    Having found that remand is warranted, the Court declines to address Plaintiff's remaining
26 arguments concerning whether the ALJ erred by examining medical records not examined by state
27 agency consultants and whether Plaintiff was prejudiced by the lack of representation at the hearing.
28 *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for

the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F.Supp.2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised.").

## **CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards.  Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for summary judgment (Doc. 21) is GRANTED.
2. The Clerk of this Court is directed to enter judgment in favor of Plaintiff Maria Guadalupe Cortes Jimenez and against Defendant Martin O'Malley, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 26, 2024**                    /s/ *Barbara A. McAuliffe*                
                                                             UNITED STATES MAGISTRATE JUDGE